Nathaniel L. Dilger (Bar No. 196203)
ndilger@onellp.com
**ONE LLP**
4000 MacArthur Blvd.
West Tower, Suite 1100
Newport Beach, California 92660
Telephone:  (949) 502-2870
Facsimile:  (949) 258-5081

Charles F. Brega (Pro Hac Vice)
cbrega@fwlaw.com
Gregory C. Smith (Pro Hac Vice)
gsmith@fwlaw.com
FAIRFIELD & WOODS PC
1700 Lincoln Street, Suite 2400
Denver, CO  80203
Telephone:   (303) 830-2400
Facsimile:    (303) 830-1033

Attorneys for Plaintiff
CTC CABLE CORPORATION

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| CTC CABLE CORPORATION, a Nevada corporation, <br><br> Plaintiff, <br> v. <br> MERCURY CABLE & ENERGY, INC. d/b/a Mercury Cable & Energy, LLC, a Nevada corporation; <br><br> Defendants. | Case No. SACV 09-261 DOC (MLGx) <br><br> **MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT** |
| MERCURY CABLE & ENERGY, a C-corporation, <br><br> Counterclaimant, <br> v. <br> CTC CABLE CORPORATION, a Nevada corporation, <br><br> Counterdefendant. | |

LAI-3077116v1

## I. Introduction.

"Given the liberal standards mandated by Rule 15, the nonmoving party bears the burden of demonstrating why leave to amend should not be granted." *Senza-Gel Corp. v. Seiffhart*, 803 F.2d 661, 666 (Fed. Cir. 1986). Defendants do not and cannot satisfy that standard here.

Plaintiff CTC Cable Corporation ("CTC") requests that the Court grant leave to file the attached Second Amended Complaint ("SAC"). Ex. 1.[1] CTC's proposed SAC does not raise any new claims for relief, but instead seeks to (1) name several additional defendants that are currently infringing and/or inducing infringement of the '162 Patent, the '319 Patent, and/or the '081 Registration, and (2) include additional allegations detailing the basis for CTC's claims, including allegations describing the relationship between the various parties and their participation in the infringement of CTC intellectual property. *Id.* CTC's proposed amendments – including the allegations regarding the additional named defendants – are largely based on facts learned by CTC subsequent to the filing of this lawsuit.

Defendant Mercury Cable & Energy Corp. ("Mercury") has refused to stipulate to CTC's proposed amendment, arguing that (1) it cannot stipulate to the proposed amendment until the Court enters a scheduling order, and (2) the SAC fails to state a claim for personal liability against the individual defendants named in the SAC, *i.e.*, Mercury contends that CTC's proposed amendments are "futile." But both arguments fail. First, that this case is at an early stage and that a scheduling order has yet to be entered in fact *favors* granting the requested leave. Second, to the extent Mercury even has standing to object on behalf of the individual defendants named in CTC's proposed complaint, the SAC alleges at least *three* bases for imposing personal liability on these individuals: direct infringement under 35 U.S.C. § 271(a); inducement of infringement under 35 U.S.C. § 271(b);

---

[1] All exhibits referenced in this memorandum, including CTC's proposed SAC, are attached to the accompanying Declaration of Nathaniel L. Dilger in Support of Plaintiffs' Motion for Leave to File Second Amended Complaint.

- 1 -

and "alter ego" liability under a "piercing the corporate veil" theory. Each of these bases, if proven true at trial, would support imposing personal liability against the named individuals. CTC's proposed amendments are thus not futile. The Court should grant leave to amend.

**II. **   **Discussion.**

Because the Court has not yet even issued a scheduling order, CTC's request for leave must satisfy only the lenient standard imposed by Rule 15(a), *i.e.*, leave to amend "shall be freely given when justice so requires." Fed. R. Civ. P. 15(a). In the absence of an "apparent reason," such as "undue delay, bad faith, dilatory motive, prejudice to defendants, futility of the amendments, or repeated failure to cure deficiencies in the Complaint by prior amendment," it is an abuse of discretion for a district court to refuse to grant leave to amend a complaint. *Foman v. Davis*, 371 U.S. 178, 182 (1962); *Moore v. Kayport Package Express, Inc.*, 885 F.2d 531, 538 (9th Cir. 1989). ("Absent prejudice, or a strong showing of any of the remaining *Foman* factors, there exists a **presumption** under Rule 15(a) in favor of granting leave to amend.") (emphasis in original); *United States v. Webb*, 655 F.2d 977, 979 (9th Cir. 1981) (courts should be guided by policy favoring decisions on the merits "rather than on the pleadings or technicalities").

As explained below, there is no "bad faith, undue delay, prejudice to the opposing party, [or] futility of amendment." *See DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 186 (9th Cir. 1987). The Court should therefore grant CTC leave to amend.

**A. Procedural History.**

CTC's sole commercial product is a patented composite carbon/fiberglass "core" designed for use in high-voltage overhead power lines. Overhead power lines are electric power transmission lines, typically suspended above the ground on large steel towers. CTC's core – which resembles a cable – is strung between the support towers and functions to support the weight of the power line. The actual

transmission of electricity is handled by stranded aluminum wires that are braided around CTC's core. Prior to the introduction of CTC's patented core, overhead power lines were supported by a braided steel cable core, which suffered from a number of shortcomings. These shortcomings included that the steel was heavy, bulky, and prone to sagging when the power line heated under load. CTC's patented core solves each of these problems: it is lightweight, thin, and suffers only minimal sag under load.

CTC has been granted several patents on its innovative core, including U.S. Pat. Nos. 7,211,319 and 7,368,162. But despite having full knowledge of these patents, Mercury nonetheless sought to market and sell a clone of CTC's core. On March 3, 2009, CTC filed suit against Mercury to stop Mercury's infringement of the '162 and '319 Patents. CTC subsequently sought and was granted leave by the Court to file a First Amended Complaint ("FAC"), which added an additional claim against Mercury for Federal copyright infringement.

After CTC filed its complaint for patent infringement, Mercury requested that the USPTO reexamine the '162 and '319 Patents and also requested that this Court stay all proceedings until the completion of this reexamination. On August 3, 2009, the Court granted Mercury's request and stayed all proceedings in this case for approximately eight months, during which time the USPTO quickly concluded its reexamination of the CTC's patent claims and confirmed their validity with either no or only minor amendments. SAC, Exs. B, D. And while the Court lifted its stay on March 24, 2010, the Court has not yet set a scheduling conference, has not established any pleading or discovery deadlines, has not set a date for trial, and discovery has only just begun.

**B. CTC's Second Amended Complaint.**

CTC seeks leave of the Court to file the attached SAC. *See* Ex. 1. CTC's proposed SAC does not raise any new claims for relief, but instead seeks to (1) add several additional defendants that are infringing the '319 Patent, the '162 Patent

- 3 -

and/or the '081 Registration, and (2) include additional allegations detailing the basis for CTC's claims, including allegations describing the relationship between the various parties and their participation in the infringement of the asserted patents.

For example, the SAC describes how Mercury was founded by several individuals - Ed Skonezny, Martin Wang and Ron Morris – who previously contracted with CTC for nearly five years to sell CTC's patented ACCC® core technology to aluminum cable manufacturers and electricity providers in China. SAC ¶¶ 43-45. These individuals were thus aware of CTC's patented technology and the advantages it provided over traditional methods of mounting high voltage overhead power lines. *Id.* at ¶ 46.

The SAC further describes how Wang, Skonezny and Morris began working with Todd Harris, Michael Winterhalter, and Terry McQuarrie (collectively "the Individual Mercury Defendants") to develop a "clone" of CTC's patented core. SAC ¶¶ 47-48. On information and belief, the Individual Mercury Defendants sought out help from within CTC, persuading CTC's former acting COO – Brian Brittsan – to provide them a veritable encyclopedia of confidential and trade secret information from every department within CTC, including highly specific information regarding the structure and manufacturing processes to make CTC's patented core. *Id.* at ¶¶ 49-50.

As well as soliciting help from within CTC, the SAC details how the Individual Mercury Defendants also solicited CTC's current and former suppliers, vendors and business partners for help designing and manufacturing the Mercury clone of the patented CTC core. *Id.* at ¶¶ 52-56. These companies include at least the following:

**Glasforms**: This company previously worked with CTC "pultruding" its patented core into a finished product.[2] *Id.* at ¶ 53. Because of this work, Glasforms

---

[2] Pultrusion is a continuous process of manufacturing composite materials with uniform cross-section whereby reinforced fibers are pulled through a resin and then

had intimate knowledge of how CTC's core was fabricated, which the Mercury Defendants sought to capitalize on by requesting that Glasforms pultrude Mercury's infringing core. Fortunately, Glasforms refused to help violate CTC's patent. *Id.* at ¶ 54.

**General Cable**: At the time it was approached by the Mercury Defendants, General Cable was still working CTC to "strand" the conductive aluminum wire sheath around the CTC composite core. *Id.* at ¶ 55. General Cable had also worked closely with CTC to obtain ISO certification for its core and thus had intimate knowledge of both CTC's product and the process for making it. *Id.* Unlike Glasforms, when approached by the Mercury Defendants, CTC has recently learned that General Cable has agreed to help violate CTC's patent rights by stranding Mercury's infringing core, an act which also directly infringes CTC's asserted patents. For this reason, General Cable is also named as a defendant in the SAC.

**Diversified**: Like Glasforms, Diversified had worked with CTC from 2003 until about 2004 pultruding CTC's patented core. But unlike Glasforms, Diversified agreed to assist the Mercury Defendants after they sought its help pultruding Mercury's infringing core. *Id.* at ¶ 56. For this reason, Diversified is another newly named defendant in the SAC.

In addition to manufacturing a direct clone of CTC's patented core, the Mercury Defendants also attempted to pass of CTC's patented core as their own. *Id.* at ¶ 57. For example, Mercury's website (www.MercuryCable.com) includes a picture that purports to be of a Mercury core. SAC, Ex. F. But the picture, which is also on display in Mercury's China showroom, is actually a photograph of ***CTC's*** commercial product that Mercury is passing off as its own. *Id.* at ¶ 57.

The SAC also describes how Defendants' plot was not limited to just copying

---

(continued…)

through a heated die. The end product of this process is typically a long, continuous somewhat flexible cable-like product. *See* http://en.wikipedia.org/wiki/Pultrusion.

CTC's patented technology and attempting to pass it off as their own.  Defendants also sought to destroy CTC in the marketplace and thereby gain control of the CTC patents (including the '162 Patent and '319 Patent) at a "fire sale" price.  This plan required, first, turning CTC's suppliers against it, and second, turning CTC's investors against it.  *Id.* at ¶ 63.

For example, the SAC explains how the Mercury Defendants approached Mike Andrews, who was then the Executive Vice President and Group President at Defendant General Cable, and enlisted him in their plot to destroy CTC.  *Id.* at ¶¶ 64-72.  The SAC further describes how – shortly after being approached by the Mercury Defendants – Mr. Andrews and General Cable first charged CTC 50% more to strand the CTC core, and then eventually dropped CTC as a customer altogether.  *Id.*  The SAC attaches numerous emails detailing Defendants' efforts to "kill" CTC.  *See, e.g.,* SAC, Exhibits G – J.

The SAC further describes how – after their plot to destroy CTC began to fail –Defendants necessarily undertook herculean efforts to escape liability for their willful infringement of CTC's intellectual property.  After it filed this lawsuit, CTC uncovered evidence showing that Defendants have been moving much of their infringing operations offshore in an attempt to evade the reach of the United States patents laws.  *Id.* at ¶¶ 75-76.  For example, CTC has learned that Defendants have formed a Chinese subsidiary called Mercury Composite Company Ltd. and tasked it with manufacturing Mercury's infringing core.  *Id.*  Defendants' other offshore operations include entities in the Cook Islands, and Belize.  *Id.*

The Individual Mercury Defendants have also formed a dizzying array of "shell" corporate entities solely to insulate themselves from personal liability for their wrongful conduct.  These shell corporations, which include the Chinese, Belizean and Cook Islands corporations noted above, include at least the following entities:

    a.  Mercury Cable & Energy, Inc.,

1    b. Mercury Cable & Energy, LLC,
2    c. Mercury Composite Company Ltd.
3    d. Energy Technologies International LLC,
4    e. Energy Technology International Company, Inc.,
5    f. Global Energy Technologies Ltd.,
6    g. Advanced Technology Holdings Ltd., and
7    h. Winter Composites, LLC.

*Id.* at ¶¶ 25. These corporations, however, are alleged to be mere "alter egos" of the Individual Mercury Defendants. *Id.*

Finally, Defendants began a delay campaign designed to buy time for its efforts at concealment and evasion. Most obviously, Defendants successfully lobbied this Court for an eight-month stay while the Patent Office considered Defendants' request to reexamine the asserted patents. *Id.* at ¶¶ 77-78. During that time, Defendants redoubled their efforts to move their operations out of the reach of the U.S. patent laws. *Id.*

CTC's proposed SAC thus provides both additional detail regarding its asserted claims, including the basis for naming the newly-added defendants to the complaint. In particular, the proposed SAC describes the participation of the newly added defendants in the infringement of the asserted patents and copyright, including the basis for holding the Individual Mercury Defendants personally liable for that infringement. These amendments are thus entirely appropriate, are not being proposed for some improper purpose, and should be allowed.

### C. The Court Should Grant Leave to Amend.

Prior to filing this motion, counsel for CTC attempted to meet and confer with Mercury's counsel regarding CTC's proposed amendment. Mercury's counsel, however, refused to stipulate to the proposed amendment. Ex. 2, Email Correspondence. Mercury's counsel gave two reasons for this refusal: first, he indicated that he could not stipulate to proposed amendment unless and until the

1  Court issued a scheduling order.  Second, he argued that – as to the Individual
2  Mercury Defendants named in the SAC – the proposed complaint "failed to state a
3  claim." *Id.*  Neither argument, however, withstands even casual scrutiny.
4      Mercury's first argument strains credulity.  That this case is at an early stage
5  and that a scheduling order has yet to be entered ***supports*** allowing CTC's
6  requested leave.  Leave to amend obviously does not depend on the entry of a
7  scheduling order.  The Federal Rules in fact adopt the commonsense approach of
8  ***favoring*** early amendment, even eliminating the requirement of obtaining the
9  approval of either the Court or the opposing party if the amendment is done early
10 enough in the case.  Fed. R. Civ. P. 15(a)(1) (allowing amendment "as a matter of
11 course" within 21 days after serving a pleading or, alternatively, within 21 days
12 after service of a responsive pleading).
13     Mercury's second argument – that the SAC fails to state a claim against the
14 Individual Mercury Defendants – fares no better than its first.  As an initial matter,
15 Mercury does not appear to have standing to object on behalf of these individual
16 defendants.  Indeed, counsel for Mercury has made quite clear that he does not
17 represent these defendants.  Ex. 2.  But even considering this argument on its
18 merits, it still fails.
19     CTC's proposed SAC does not add any new claims, only new parties (and
20 allegations supporting the inclusion of these new parties).  Rule 20(a)(2) provides
21 that defendants may be joined in an action if:
22     (A) any right to relief is asserted against them . . . with respect to or
23     arising out of the same transaction, occurrence, or series of
24     transactions or occurrences; and (B) any question of law or fact
25     common to all defendants will arise in the action.
26 Fed. R. Civ. P. 20(a)(2).
27     It cannot be reasonably disputed that Rule 20 is satisfied.  The same right to
28 relief – patent and copyright infringement – is being asserted against the newly

named corporate and individual defendants. And the same question of law or fact – Defendants' liability for infringement of the '162 Patent, the '319 Patent, and/or the '081 Registration – will arise in the action. Mercury does not appear to contend otherwise. Rather, according to Mercury's counsel, the SAC lacks "sufficient allegations for alter ego liability, inducing infringement or any other basis for asserting liability for patent or copyright infringement." *Id.* But Mercury's counsel is wrong. CTC's proposed SAC alleges at least ***three*** bases for holding the Individual Mercury Defendants liable for patent and/or copyright infringement: (1) infringement under § 271(a), *i.e.*, "direct" infringement; (2) infringement under § 271(b), *i.e.*, "inducement" infringement; and (3) "alter ego" liability.

### 1. 35 U.S.C. § 271(a) – direct infringement.

As to direct infringement under § 271(a), the SAC alleges that each of the Individual Mercury Defendants – all of whom are officers and/or directors of Mercury – "directs, conducts, controls or ratifies the actions of Mercury, including directing, conducting, controlling, or ratifying the unauthorized infringement of the '162 Patent, the '319 Patent, and/or the '081 Registration." *See, e.g.,* SAC ¶¶ 8, 10, 12, 14, 16, 18, 20. And as the Federal Circuit has made clear, "officers of a corporation are personally liable for the tortious conduct of the corporation if they personally took part in the commission of the tort or specifically directed other officers, agents, or employees of the corporation to commit the tortious act." *Orthokinetics, Inc. v. Safety Travel Chairs, Inc.*, 806 F.2d 1565, 1579 (Fed. Cir. 1986); *see also Fromson v. Citiplate, Inc.*, 886 F.2d 1300 (Fed. Cir. 1989) (officers who "plainly participated in and approved of the infringement of plaintiff's patent" and who gave "false assurances" of solvency jointly liable for damages); *Symbol Technologies, Inc. v. Metrologic Instruments, Inc.*, 771 F. Supp. 1390, 1402 (D.N.J. 1993) ("The cases are legion in which courts have recognized and imposed personal liability on corporate officers for participating in, inducing, and approving acts of patent infringement."); *accord Water Techs. Corp. v. Calco, Ltd.*, 850 F.2d 660

(Fed. Cir. 1988).

The SAC specifically alleges that each of the individual defendants directed and controlled the infringement of CTC's asserted copyright and patents. *See, e.g.,* SAC ¶¶ 8, 10, 12, 14, 16, 18, 20. These allegations, if proven true, establish individual liability for direct infringement under 35 U.S.C. § 271(a).

### 2. 35 U.S.C. § 271(b) – inducement of infringement.

Regarding inducement of infringement under § 271(b), "it is well settled that corporate officers who actively aid and abet their corporation's infringement may be personally liable for inducing infringement under § 271(b) regardless of whether the corporation is the alter ego of the corporate officer." *Orthokinetics*, 806 F.2d at 1579; *see also Sensonics, Inc. v. Aerosonic Corp.*, 81 F.3d 1566, 1575 (Fed. Cir. 1996) (CEO having "authority to control or discontinue production" of infringing device found liable for inducing infringement); *Fuji Photo Film Co. v. Jazz Photo Corp.*, 394 F.3d 1368, 1377-78 (Fed. Cir. 2005) (former director and consultant of infringer found liable for inducement of infringement).

The SAC alleges sufficient facts that – if true – establish inducement of infringement under § 271(b):

> The Individual Mercury Defendants are also liable for inducement of infringement of the '162 Patent and the '319 Patent in that they (1) knew or should have known their actions would induce direct infringement by corporations listed above (including Mercury); and (2) by their actions, they actually induced direct infringement by one or more of these corporations.

SAC ¶ 27.

These allegations, if proven true, establish that that Individual Mercury Defendants are not only liable for direct infringement under 35 U.S.C. § 271(a), but also inducement of infringement under § 271(b).

### 3. "Alter ego" liability.

- 10 -

The SAC also sufficiently alleges "alter ego" liability against the Individual Mercury Defendants. Alter ego liability requires two findings: (1) such unity of interest, ownership, or control that the separate personalities of the corporation and the individual no longer exist; and (2) that the failure to disregard the corporation would result in fraud or injustice. *U.S. v. Standard Beauty Supply Stores*, *Inc*., 561 F.2d 774, 777 (9th Cir. 1977).

As discussed above, the Individual Mercury Defendants colluded to form multiple "shell" corporations in an effort to escape liability for, among other things, the wrongdoing alleged in CTC's complaint. SAC ¶¶ 24, 76. These sham corporations, which include offshore entities in China, Belize and the Cook Islands, are alleged to be mere alter egos of the Individual Mercury Defendants. *Id.* at ¶ 25. The SAC further alleges that "the Individual Mercury Defendants have given little respect to the separate identity of the above corporations, including, for example, a disregard of corporate formalities" and that "recognition of the corporate form here would either sanction a fraudulent intent to evade liability, or promote injustice to CTC." *Id.* These allegations, if true, establish a third basis for holding the Individual Mercury Defendants liable for patent and/or copyright infringement.

The Court can deny leave to amend only if "it appears beyond doubt" that CTC "can prove no set of facts which would entitle [it] to relief." *Vazquez v. L.A. County*, 487 F.3d 1246, 1249 (9th Cir. 2007) (internal quotations and citation omitted); *see also Sweaney v. Ada County, Idaho*, 119 F.3d 1385, 1393 (9th Cir. 1997) ("[A] proposed amendment is futile only if no set of facts can be proved under the amendment to the pleadings that would constitute a valid and sufficient claim or defense.") And as explained above, CTC have alleged ***three*** alternative bases for holding the Individual Mercury Defendants personally liable for infringement of the '162 Patent, the '319 Patent, and/or the '081 Registration. Defendants plainly cannot sustain the heavy burden imposed by Rule 15(a). The Court should grant CTC leave to amend.

### III. Conclusion.

The Court should grant CTC leave to amend its complaint to add additional defendants and to include additional detail regarding the asserted claims. CTC's proposed SAC describes the participation of the newly added defendants in the infringement of the asserted patents and copyright, including the basis for holding the Individual Mercury Defendants personally liable for that infringement. Because these amendments are entirely appropriate and are not being proposed for some improper purpose, the Court should grant CTC leave to amend.

Dated: June 21, 2010                                **ONE LLP**

                                                    By: /s/ Nathaniel L. Dilger
                                                    Nathaniel L. Dilger

                                                    Attorneys for Plaintiff
                                                    CTC CABLE CORPORATION