1    JAMES DOROSHOW, (SBN 112920)
     jdoroshow@foxrothschild.com
2    JONATHAN R. LANAGRENNE
     jlanagrenne@foxrothschild.com
3    CHRISTOPHER R. KINKADE
     ckinkade@foxrothschild.com
4    FOX ROTHSCHILD LLP
     1800 Century Park East, Suite 300
5    Los Angeles, CA  90067-1506

6    Attorneys for Defendant and
     Counterclaimant
7    MERCURY CABLE & ENERGY, LLC

8

9

10

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**SOUTHERN DIVISION**

11

12   CTC CABLE CORPORATION, a
     Nevada corporation,

13          Plaintiff,

14      vs.

15   MERCURY CABLE & ENERGY,
     LLC, a Nevada limited liability
16   company,

17          Defendant.

18   MERCURY CABLE & ENERGY, a C-
     corporation,,

19

20          Counterclaimant,

21      vs.

22   CTC CABLE CORPORATION, a
     Nevada corporation,,

23          Counterclaim-Defendant.

Case No.: CV-09-261 DOC (MLGx)

**MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFF'S MOTION TO FILE A SECOND AMENDED COMPLAINT**

Date:        July 19, 1020
Time:        8:30 a.m.
Department:  9D
Honorable David O. Carter

24

25

26

27

28

*FOX ROTHSCHILD LLP*
*[Office Address]*

1

## **TABLE OF CONTENTS**

2    I. INTRODUCTION ................................................................................ 2

3    II. FACTUAL BACKGROUND ............................................................ 3

4       A. The Nature of the Case and Pertinent Procedural History .................. 3

5       B. The Ongoing State Trade Secret Litigation ........................................ 6

6       C. CTC's Changes in the SAC .................................................................. 6

7       D. The Parties' Pre-Motion Discussions .................................................. 8

8    III. ARGUMENT .................................................................................... 8

9       A. Mercury has Standing to Oppose the SAC ......................................... 8

10      B. The Court Should Conduct a Scheduling Conference in the First

11         Instance ............................................................................................... 9

12      C. The Proposed Claims Against New Parties are Futile, In any Event ..... 11

13        1. The SAC Does Not Allege Any Basis for Imposing Liability
            on the New Corporate Defendants ..................................................... 12

14

15        2. CTC Has Not Alleged Any Infringing Acts by Three of the
            Newly-Named Individual Defendants ............................................... 13

16        3. CTC's Claims Against the Other Individual Defendants
            Similarly Fail ..................................................................................... 14

17

18        4. CTC Has Not Adequately Pled Alter Ego Liability .......................... 16

19        5. CTC Has Not Alleged Infringement By Mercury's
            Business Partners ............................................................................... 18

20        6. CTC Should Not Be Permitted to Add Doe Defendants .................... 20

21      D. Many of CTC's Proposed "Additional Allegations" are Irrelevant
      and Inflammatory ................................................................................ 20

22    IV. CONCLUSION ................................................................................ 21

23

24

25

26

27

28

FOX ROTHSCHILD LLP
[Office Address]

i

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

FOX ROTHSCHILD LLP
[Office Address]

## **TABLE OF AUTHORITIES**

**Page(s)**

CASES

*Ashcroft v. Iqbal,*
    129 S. Ct. 1937 (2009).................................................................................12, 13

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007)...........................................................................................12

*Benetec Australia, Ltd. v. Nucleonics, Inc.,*
    495 F.3d 1340 (Fed. Cir. 2007)........................................................................14

*Brown v. Duchesne,*
    60 U.S. 183 (1856).............................................................................................14

*Conlon Group Arizona, LLC v. CNL Resort Biltmore Real Estate, Inc.,*
    No. CV-08-0965-PHX-FJM, 2009 WL 249419 (D. Ariz. Feb. 2, 2009)................9

*DSU Med. Corp. v. JMS Co., Ltd.,*
    471 F.3d 1293 (Fed. Cir. 2006)........................................................................16

*Ecklund v. Nevada Wholesale Lumber Co.,*
    93 Nev. 196, 562 P.2d 479 (Nev. 1977) ......................................................17, 18

*Fletcher v. Atex, Inc.,*
    68 F.3d 1451 (2d Cir. 1995)..............................................................................16

*Int'l Rectifier Corp. v. Samsung Elecs. Co., Ltd.,*
    361 F.3d 1355 (Fed. Cir. 2004)......................................................................7, 14

*Johnson v. Mammoth Recreations, Inc.,*
    975 F.2d 604 (9th Cir. 1992) .......................................................................10, 11

*Kalb, Voorhis & Co. v. American Financial Corp.,*
    8 F.3d 130 (2d Cir. 1993).................................................................................16

*McCleary Cattle Co. v. Sewell,*
    73 Nev. 279, 317 P.2d 957 (Nev. 1957) ..........................................................17

*MEMC Elec. Materials, Inc. v. Mitsubishi Materials Silicon Corp.,*
    420 F.3d 1369 (Fed. Cir. 2005).....................................................................14, 15

*Microsoft Corp. v. AT&T Corp.,*
    550 U.S. 437 (2007)...........................................................................................15

ii

*Moss v. U.S. Secret Serv.*,
    572 F.3d 962 (9th Cir. 2009) ............................................................................12

*Pellegrini v. Analog Devices, Inc.*,
    375 F.3d 1113 (Fed. Cir. 2004).........................................................................14

*Schlumberger Logelco Inc. v. Morgan Equipment Co.*,
    No. C-94-1776 MHP, 1996 WL 251951 (N.D.Cal. May 3, 1996) .........................17

*Transcontinental Insur. Co. v. Road One, Inc.*,
    Case No. 1:04-cv-273 2006 U.S. Dist. LEXIS 1071 (E.D. Tenn. Jan. 5, 2006).....................16

*Wang Hartmann Gibbs & Cauley, PC v. Silver Point Capital, L.P.*,
    No. SACV08-01411 DOC ...............................................................................10

*Wordtech Sys., Inc. v. Integrated Networks Solutions, Inc.*,
    2010 WL 2384958 (Fed. Cir. June 16, 2010) ....................................................16


**STATUTES**

35 U.S.C. § 271 ...................................................................................................14

FOX ROTHSCHILD LLP
[Office Address]

Memorandum of Points and Authorities in Opposition to Plaintiff's Motion to File Second Amended Complaint

LA1 46824v1 06/28/10

## I.   **INTRODUCTION**

Defendant and Counterclaimant Mercury Cable & Energy ("Mercury") respectfully opposes the motion by Plaintiff and Counterdefendant CTC Cable Corporation ("CTC") for leave to file a Second Amended Complaint ("SAC") for two reasons.

*First*, as the Court will recall, shortly after it was filed, this action was stayed for over 8 months pending a re-examination of CTC's two patents before the United States Patent and Trademark Office ("PTO").  After proceedings before the PTO were completed, the stay was lifted by this Court on March 24, 2010.  (D.I. 74).  To date, this Court has never conducted a scheduling conference in this action, either before the action was stayed or for the past 3 months since the stay was lifted in March 2010.

Accordingly, when CTC's counsel recently informed Mercury's counsel of its desire to file a Second Amended Complaint, Mercury proposed to CTC that, before the Court ruled on any motions, including motions to amend pleadings or add parties, the parties jointly request that the Court schedule an initial case management conference.  This would obviously allow the parties the benefit of knowing what deadlines the Court intended to order in this action, including what deadline applies for amending pleadings and adding new parties.  CTC refused to cooperate.  See accompanying Doroshow Decl. at ¶ 5.  As a result, to this day, over 15 months after this action was originally filed on March 3, 2009, the parties still do not know what deadlines this Court intends to order, including what deadline applies for amending pleadings or adding new parties.  Mercury believes the first order of business in this action should be to clearly establish what deadlines apply in this action for all pre-trial and trial proceedings.  CTC apparently disagrees.

*Second*, assuming that the parties are still free to amend pleadings and add new parties, Mercury opposes CTC's motion to amend because the SAC lacks allegations sufficient to state a claim against the new defendants; and it includes irrelevant and inflammatory allegations included in an effort to create improper prejudice.  If there is

FOX ROTHSCHILD LLP
[Office Address]

1    to be any amendment in this case, it should be factually based, confined to the patent

2    and copyright issues in this case, and adequately allege the bases (if any) for allegedly

3    holding any new defendants liable.

4        Mercury previously stipulated to the filing of the First Amended Complaint.

5    (D.I. 18.)  Now faced with a second proposed amendment, Mercury seeks clarification

6    from the Court whether amendments are still permitted, and if so, when the final

7    deadline is for amending pleadings and adding new parties.  If permitted, Mercury

8    itself may amend its counterclaims in this action and could add new parties.  Also,

9    before amendments are permitted (if at all), Mercury wants the opportunity to address

10   with this Court the possibility of bifurcating certain issues in these proceedings.

11   Mercury has not made, used or sold any product in the United States.  Before any

12   additional amendments are permitted or new parties are added to this case, Mercury

13   believes this threshold issue should be addressed by the parties and the Court as it

14   could moot the entire litigation.

15        In any event, having refused to appear before the Court for a routine scheduling

16   conference, CTC's proposed amendment should be of course, closely solely

17   scrutinized, and, Mercury believes, rejected in this instance because it is futile.  Even

18   if CTC is granted leave to amend, the Court should at a minimum promptly enter a

19   scheduling order that sets specific deadlines in this action, including final dates for

20   amending pleadings and adding new parties if they have not already passed.

21   **II.**     <u>**FACTUAL BACKGROUND**</u>

22       **A.**     **The Nature of the Case and Pertinent Procedural History.**

23        This is largely a patent infringement case.  CTC maintains it is in the business

24   of producing high voltage composite reinforced conductors for electrical transmission

25   lines.  Power lines have traditionally been manufactured using a steel core surrounded

26   by aluminum wire.  Composite cores made of resins and high-strength fibers offer

27   advantages over conventional steel-core cables.  CTC alleges it has certain United

28   States patents in this area, including United States Patent Nos. 7,306,162 and

FOX ROTHSCHILD LLP
[Office Address]

3

1   7,211,319 (the "patents in suit").

2       Mercury has developed its own proprietary resin mixtures, fiber combinations,
3   and manufacturing processes in order to produce its own unique composite electrical
4   transmission cable product.  Mercury has been issued patents of its own for its
5   inventions.  Mercury's patented and proprietary technology sets its products apart
6   from those of CTC and other competitors.  Nevertheless, CTC contends that
7   Mercury's technology infringes CTS's patents.  In truth and in fact, Mercury has not
8   made, used to sold any product in the United States that would subject it to liability
9   for patent infringement; even if CTC's allegations were otherwise true (which they are
10  not).

11      CTC filed its Complaint in this action in March 2009, at that time merely
12  asserting two claims for patent infringement against Mercury and no other parties.
13  (Compl., D.I. 1)  After the Complaint was filed, the Court scheduled the initial case
14  management conference for August 3, 2009.  (D.I. 15.)  Ordinarily, immediately after
15  the conference the Court would have issued a scheduling order that would have
16  required CTC to bring any motion for leave to amend or to join additional parties
17  within 60 days.  (*See* Standard Scheduling Order at 1.)  In response to CTC's
18  accusations of patent infringement, however, Mercury sought re-examination of
19  CTC's patents before the PTO in the first instance.  Mercury then moved to stay the
20  litigation pending completion of the re-examination proceedings, and the Court
21  granted Mercury's motion.  (D.I. 48.)  Because the Court granted Mercury's motion to
22  stay the case pending re-examination of CTC's patents, the Court cancelled the case
23  management conference and did not enter its standard order.  (See D.I. 47.)

24      Shortly after Mercury answered in May 2009, CTC requested leave to amend its
25  complaint to add a copyright claim.  Again the only defendant named in the First
26  Amended Complaint was Mercury and no one else.  (D.I. 18.)  Mercury consented to
27  this motion.  (*Id.*)  The Court subsequently granted CTC's motion.  (D.I. 23.)

28      CTC's purpose in amending the complaint was obvious, *i.e.*, to add a claim

*FOX ROTHSCHILD LLP*
[Office Address]

4

1    unrelated to its patent claims, in the hope that the Court would deny Mercury's motion

2    to stay the litigation pending the examination of CTC's patents before the PTO. (*See*

3    D.I. 19-22; D.I. 35.)  Thus, in opposing Mercury's notice to stay the proceedings,

4    CTC argued that the Court should not stay this action because of the pendency of its

5    copyright claim. *(Id.)*  CTC's copyright infringement claim was and remains based on

6    the remarkable contention that Mercury has allegedly hung what CTC maintains is a

7    copyrighted photograph for Mercury's *China showroom*, and then included a

8    photograph of the showroom in which the wall hanging is visible on the Mercury

9    website.  (D.I. 18-1.)  Of course, even if one were to accept CTC's allegations as true,

10   hanging a photo *in China* would not infringe any copyright, let alone a U.S. copyright,

11   and any Website display would be a *de minimis* use for which CTC could not recover.

12   In the end, CTC's gamesmanship in amending its Complaint before the Court ruled on

13   Mercury's motion was unsuccessful; and the Court granted the stay, irrespective of

14   CTC's new copyright claim.  (D.I. 48.)

15        The patent re-examination proceedings were eventually completed early this

16   year.  (*See* D.I. 73.)  Thereafter, the parties jointly requested that the stay be lifted and

17   the Court lifted the stay of this action on March 24, 2010.  (D.I. 74.).

18        Although the stay was in place for over approximately 8 months, CTC has filed

19   nothing with this Court for the past 3 months before recently filing its motion for

20   leave to file a Second Amended Complaint.  As discussed below, at the same time,

21   during the past year, the parties have continued to take discovery in a related trade

22   secret action currently pending between them in California State court.  See

23   *Composite Technology Corp., et al. v. Mercury Cable & Energy, LLC, et al.,* Superior

24   Court of California, Case No. 30-2008-00110633 (the "State Trade Secret Action").

25   Although CTC sued three Mercury executives (Ronald Morris, Edward Skoonzay and

26   Wang Chen) years ago in the State Trade Secret Action (including before the stay was

27   granted in this action), and even though, the same accused product that is at issue in

28   this action is being litigated in the State Action, CTC has never sought to sue anyone

FOX ROTHSCHILD LLP
[Office Address]

5

1  other than Mercury in this action until recently filing its Motion for Leave to File a

2  Second Amended Complaint.  CTC's desire to now name three executives (and

3  others), at this late date is merely a further desperate attempt by CTC to escalate the

4  cost of this litigation and to try to exert as much pressure on Mercury as possible

5  regardless of the merit or lack of merit of CTC's claims.

6  **B.    The Ongoing State Trade Secret Litigation**

7  CTC filed the State Trade Secret Action in August 2008; thus, it has been

8  pending for nearly two years.  In that Action, CTC asserts that certain of Mercury's

9  principals purportedly stole CTC's trade secrets during the time they were employed

10  at CTC.  Many of CTC's allegations in the State Action are similar, if not identical, to

11  new allegations CTC proposes to include in the SAC.  Thus, CTC maintains in both

12  actions that the same accused product was allegedly misappropriated by Mercury

13  which is the subject of CTC's patent claims.

14  During the time this Court stayed this action, the parties continued to litigate the

15  State Trade Secret Action.  Since discovery in that case overlaps with discovery in this

16  case, CTC has had abundant opportunity over the last to take discovery concerning

17  Mercury's activities, including whether Mercury has made, used or sold any product

18  in the United States.  CTC therefore knows that full well no such activity has taken

19  place.  CTC also knows there is absolutely no merit to any of the claims it seeks to

20  add against Mercury or anyone else in filing its proposed Second Amended

21  Complaint.

22  **C.    CTC's Changes in the SAC**

23  As discussed in this Court's Order granting a stay pending re-examination of

24  CTC's patents, Mercury's product remains under development and Mercury is not

25  making, using or selling any product in the United States at this time.  (Order on

26  Motion to Stay, D.I. 48 at 7.  *See also* CTC Mem. in Opp. To Motion for Stay, D.I. 35

27  at 12; Marvin Sepe Decl. in Supp. of Ex Parte App. To Amend Compl., D.I. 54 at ¶ 4.)

28  The absence of any allegedly infringing activity in the United States prevents CTC

FOX ROTHSCHILD LLP
[Office Address]

6

1  from recovering on its patent infringement claims, either as framed or as CTC

2  proposes to amend them.

3           In any event, even if Mercury had made, used or sold any accused product in

4  the United States (which is has not), and any such product infringed CTC's patents

5  (which it does not), CTC's patent infringement theory, as alleged in its SAC, is

6  "tantamount to conspiracy to infringe a patent, a theory which has no basis in law"

7  *Int'l Rectifier Corp. v. Samsung Elecs. Co., Ltd.,* 361 F.3d 1355, 1361 (Fed. Cir. 2004)

8  (citing *Cognitronics Imaging Sys., Inc. v. Recognition Res. Inc.,* 83 F. Supp. 2d 689,

9  699 n.15 (E.D. Va. 2000) ("there is no statute in the federal laws concerning patents

10 which gives rise to a cause of action for 'conspiracy'")).

11          Rather than addressing these crucial defects in the SAC, CTC has attempted to

12 gloss over them, making conclusory allegations that all defendants purportedly

13 infringe its patents rather than identifying (because it cannot) any specific instance of

14 U.S. manufacture, use or sale, or how any new defendant has purportedly made, used

15 or sold an infringing product.  Instead of addressing the critical infirmities in its case,

16 CTC asks the Court to permit it to add **32** new defendants, including 2 foreign

17 companies (neither of which is alleged to engage in any U.S. activity) and 27

18 individuals, 20 of whom are "Doe" defendants that CTC is still unprepared to identify

19 despite already taking substantial discovery in the State Trade Secret Action.  CTC

20 further seeks to add 73 new paragraphs of allegations, nearly quadrupling the size of

21 its pleading, while not adding a single new allegation pertaining to any of the elements

22 of patent or copyright infringement.  Of those 73 paragraphs, 28 consist of salacious

23 allegations unrelated to whether any defendant is making, using or selling an

24 infringing product, including under the inflammatory caption "After Leaving CTC,

25 Defendants Hatch a Two-Part Plot to Steal CTC's Patented ACCC® Composite Core

26 Technology." (D.I. 79-1, ¶¶ 46-73.)  Another 5 consist of insinuations concerning

27 Mercury's alleged offshore operations, none of which has any bearing on U.S. patent

28 or copyright law (other than that offshore activities are clearly not acts of

FOX ROTHSCHILD LLP
[Office Address]

7

1   infringement) under the heading "Unable to 'Kill' CTC, Defendants Attempt to Move

2   their Operations Offshore to Avoid Liability for Patent Infringement." (D.I. 79-1, ¶¶

3   74-78.)

4          **D.**     **The Parties' Pre-Motion Discussions**

5        Prior to CTC filing its motion to amend, Mercury asked CTC to join Mercury in

6   requesting the Court schedule a case management conference. The reason for

7   Mercury's request was obvious: *i.e.*, once a scheduling order enters, there will be

8   certainty concerning the timing of all events in the case, including any requests to

9   amend pleadings or add new parties. When the parties filed their stipulation to lift the

10   stay, the parties included a request that the Court hold a scheduling conference and

11   enter a scheduling order. (D.I. 73.) Because CTC now apparently resists entry of a

12   scheduling order even though it is customary in every civil proceeding before this

13   Court, Mercury is obviously concerned that CTC hopes to achieve a "blank check" to

14   continue to expand the scope of this litigation without regard to the orderly scheduling

15   of deadlines for all pre-trial and trial proceedings. As part of a scheduling order,

16   Mercury would also like to address with the Court the early resolution of this

17   litigation on a number of central issues, including the absence of any activity within

18   the United States that would subject Mercury (or anyone else) to liability for patent

19   infringement regardless of what theory CTC proposes in its current Complaint or in its

20   proposed SAC. Thus, Mercury believes it to be far more efficient for the Court to

21   address this critical issue before additional parties are added to this case and the

22   litigation is greatly expanded. This is one of the principal reasons why the Court

23   should schedule a scheduling conference before there is further activity in this case,

24   including any ruling by the Court on any motion to amend.

25   **III.**   **ARGUMENT**

26        **A.**     **Mercury has Standing to Oppose the SAC**

27        Mercury clearly has standing to oppose a motion to amend pleadings under

28   Rule 15, including where such motion seeks to join additional parties. In opposing

FOX ROTHSCHILD LLP
[Office Address]

1   this motion, Mercury is entitled to object on the ground that the proposed amended
2   pleading fails to state a claim against the additional parties. *See Conlon Group*
3   *Arizona, LLC v. CNL Resort Biltmore Real Estate, Inc.*, No. CV-08-0965-PHX-FJM,
4   2009 WL 249419 at *2 (D. Ariz. Feb. 2, 2009)(motion for leave to amend denied for
5   failure to state a claim against proposed additional defendants).  CTC offers no
6   authority for its argument that Mercury is somehow prohibited from addressing the
7   inadequacy in CTC's proposed amended pleading to add additional defendants, and its
8   suggestion that Mercury lacks standing is unfounded.

9         CTC seeks to turn a straight-forward patent infringement case into a circus
10   featuring Mercury's officers, directors and shareholders, Mercury's business partners,
11   employees of Mercury's business partners, and 20 as yet unnamed additional
12   individuals.  CTC's intent is clear.  CTC hopes that by naming every possible party
13   who has any association with Mercury, regardless of the merits of its claims, that this
14   will cripple Mercury financially or destroy its business relations in a manner to force
15   Mercury to collapse before it has even introduced a product into market.  This Court
16   should not reward or sanction CTC's bullying  tactics and should carefully scrutinize
17   CTC's proposed amendment for what it is *i.e.*, an improper attempt to drive Mercury
18   out of business.

19   **B.     The Court Should Conduct a Scheduling Conference In the First**
20   **         Instance.**

21         Ordinarily, immediately after the initial case management conference scheduled
22   for August 3, 2008 (D.I. 15), this Court would have issued a scheduling order that
23   would have required CTC to bring any motion for leave to amend or to join additional
24   parties within 60 days.  (*See* Standard Scheduling Order at 1.)  The Court would have
25   had no reason to depart from its standard procedure because, in their Rule 26(f) report,
26   neither side requested additional time, and neither indicated a desire to join additional
27   parties.  (D.I. 34 at 3.)  In fact, CTC already amended its Complaint once before a stay
28   was entered and has never expressed any interest in suing anyone other than Mercury

**FOX ROTHSCHILD LLP**
[Office Address]

9

1  for over a year.  At the same time, CTC has been proceeding for years with claims

2  against a number of Mercury's executives in the State Trade Secret Action.  Thus,

3  CTC cannot possibly claim at this date that it has only recently learned of new parties

4  that would support a further amendment at this time.

5      Because the Court granted Mercury's motion to stay the case pending re-

6  examination of CTC's patents, the Court did not hold the initial case management

7  conference and did not enter its standard order.  (See D.I. 47-48.)  At the same time,

8  the Court did not grant CTC more than the standard 60 days to file a motion for leave

9  to amend or join additional parties.  The Court lifted the stay on March 24, 2010.

10  (D.I. 74.) Using the standard 60 days as the benchmark, CTC should have filed its

11  motion to amend  no later than May.  It did not do so.

12      CTC should not be permitted to take advantage of the absence of a scheduling

13  order to avail itself of a more lenient standard by which timely motions for leave to

14  amend are judged.  Instead, because this case was pending for approximately 4

15  months before the stay, and was active again for more than 60 days after the Court

16  lifted the stay and before CTC filed its motion; CTC should be held to the customary

17  standard for filing motions to amend.  That is to treat them as motions to modify a

18  scheduling order under Rule 16 and grant them only on a showing of "good cause"

19  for the delay <u>and</u> otherwise meeting the requirements of Rule 15.  *See Johnson v.*

20  *Mammoth Recreations, Inc.*, 975 F.2d 604, 607-608 (9th Cir. 1992) (court may deny

21  untimely motion for leave to join additional parties or treat the motion as one to

22  modify the scheduling order for good cause); *Wang Hartmann Gibbs & Cauley, PC v.*

23  *Silver Point Capital, L.P.*, No. SACV08-01411 DOC (ANx), 2009 WL 3517674 (C.D.

24  Cal. Oct. 26, 2009)(court should treat untimely motion for leave to amend as one to

25  modify scheduling order and require both good cause and adherence to Rule 15).

26      The "good cause" standard primarily considers the diligence of the party

27  seeking the amendment. "Although the existence or degree of prejudice to the party

28  opposing the modification might supply additional reasons to deny a motion, the focus

10

FOX ROTHSCHILD LLP [Office Address]

1  of the inquiry is upon the moving party's reasons for seeking modification.  If that

2  party was not diligent, the inquiry should end." *Johnson* at 608 (citations omitted).

3        CTC was not diligent.  Because the State Trade Secret Action between the

4  parties has been ongoing for years even while this action was stayed, the alleged facts

5  and additional parties CTC now seeks to add were fully known to CTC during the

6  entire pendency of this action, even before the Court entered its stay.  CTC seemingly

7  made no effort to prepare its motion for leave to amend during the stay.  It could have,

8  but did not, promptly file its motion for leave to amend immediately after the stay

9  lifted.  Because good cause is absent, and for the additional reasons discussed below,

10  the motion should be denied.

11        However, in the event the Court decides to excuse CTC's delay and allow a

12  second amendment at this late date, the Court should nevertheless insure that CTC is

13  not permitted free reign to metamorphose this lawsuit indefinitely.  The Court should

14  hold a case management conference and issue a scheduling order as promptly as

15  possible.  Alternatively, the Court should postpone the hearing on the motion to

16  amend until after the scheduling conference so the Court can determine whether these

17  proceedings should be bifurcated to address preliminary issues of liability before CTC

18  greatly expands the scope of the litigation by bringing in additional parties at this

19  stage.  Specifically, the Court should first address whether there is any activity in the

20  United States that gives rise to any patent infringement claim, against Mercury or

21  anyone else.  If not, there is no reason to greatly expand the scope of this litigation as

22  CTC now proposes.

23      **C.**    **The Proposed Claims Against New Parties are Futile, In any Event**

24        Leave to amend should be denied in any event because CTC is unable to state

25  claims against the new defendants; *i.e.*, the proposed amendments are futile.  *See*

26  *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 607 (9th Cir. 1992)(after the

27  filing of a responsive pleading, "leave to amend should be granted unless amendment

28

FOX ROTHSCHILD LLP
[Office Address]

Memorandum of Points and Authorities in Opposition to Plaintiff's Motion to File Second Amended Complaint

LA1 46824v1 06/28/10

1   would cause prejudice to the opposing party, is sought in bad faith, is futile, or creates

2   undue delay.").

3         **1.     The SAC Does Not Allege Any Basis for Imposing Liability on**

4   **the New Corporate Defendants**

5         The only allegations in the SAC concerning any actions allegedly taken by two

6   of othe new proposed corporate defendants, (Energy Technology International

7   Company and Advanced Technology Holdings, Ltd.), is that they are doing business

8   in this district "including business related to the claims asserted in the Complaint,"

9   and that they were purportedly formed "in an effort to escape liability in the U.S.

10  Courts for their wrongful conduct, including their infringement of CTC's intellectual

11  property rights." (SAC ¶¶ 6-7; 76.)  That is all.  There are no allegations that either of

12  these two new corporate defendants make, use or sell any infringing device, or

13  engaged in any other wrongful conduct beyond the mere fact that they were formed --

14  which of course could not possibly be the basis of any infringement claim, or any

15  other basis of liability.

16        Those paltry allegations, coupled with CTC's conclusory allegations that all

17  defendants have somehow infringed CTC's patents (SAC ¶¶ 81-85, 88-91, 95-99), are

18  obviously not sufficient to state a claim under the more strict pleading requirements

19  announced by the Supreme Court in the *Bell Atl. Corp. v. Twombly*, 550 U.S. 544

20  (2007) and *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009) cases.  As explained in those

21  cases, the *nonconclusory* factual content, and reasonable inferences from that content,

22  must at least plausibly suggest a claim entitling the plaintiff to relief.  *Moss v. U.S.*

23  *Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) (summarizing the standard set forth in

24  *Iqbal* and *Twombley* (emphasis added)).  "A claim has facial plausibility, when the

25  plaintiff pleads factual content that allows the court to draw the reasonable inference

26  that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949.

27  / / /

28  / / /

FOX ROTHSCHILD LLP
[Office Address]

12

## 2. CTC Has Not Alleged Any Infringing Acts by Three of the Newly-Named Individual Defendants

The SAC proposes to name virtually every shareholder, officer and director of Mercury as a new defendant regardless of any factual or legal basis for imposing liability, including naming a total of six new individuals.  As to two of those individuals, Michael Winterhalter and Terry McQuarrie, CTC offers no specific allegations whatsoever; only the same conclusory allegations leveled at all individual defendants that they do business in this District, "including business related to the Claims asserted in this Complaint," and "upon information and belief," each allegedly "directs, conducts, controls or ratifies the actions of Mercury, including directing, conducting controlling or ratifying the unauthorized infringement," together with the naked accusation that these two individuals purportedly were hired by Mercury "to help this effort." (SAC ¶¶ 16-19, 48.)  Then, rather than allege any facts that would support a claim for individual liability, they are simply lumped into the same conclusory allegation that "defendants" as a group allegedly infringed the patents and CTC's alleged copyright.  (SAC ¶¶ 81-85, 88-91, 95-100.)  Such conclusory allegations are clearly insufficient to state a claim under the *Iqbal/Twombley* standard. For his part, newly proposed individual defendant, J. Michael Andrews, is misidentified in the "Parties" section of the SAC as a shareholder of Mercury.  (SAC ¶¶ 20-21.)   Then he is accused of the same conclusory wrongdoing as the other Mercury directors and shareholders, even though he is not a shareholder. (*Id.*)  Later in the SAC, CTC identifies him as an executive with General Cable Corporation. (SAC ¶ 64.)  In that section, CTC alleges only that other defendants wrote in emails that Mr. Andrews wanted General Cable to raise prices to CTC and invest in Mercury. (SAC ¶¶ 65-72.)  That is the totality of CTC's allegations against Mr. Andrews. Clearly, such scant allegations are not sufficient to hold Mr. Andrews liable for either patent or copyright infringement, or to establish any other basis for liability under the *Iqbal/Twombley* standard.

13

LA1 46824v1 06/28/10

FOX ROTHSCHILD LLP
[Office Address]

3.     **CTC's Claims Against the Other Individual Defendants Similarly Fail**

CTC's allegations against the other four proposed additional individual defendants (Morris, Skonezny, Chen and Harris), while more detailed than those directed at the other individuals, still fall well short of sufficiently alleging acts to support a claim of direct infringement or inducing infringement.

To state a claim of patent infringement, the law requires that plaintiff plead facts that show that the defendant "without authority makes, uses, offers to sell, or sells any patented invention, *within the United States or imports into the United States* any patented invention during the term of the patent therefore," or "actively induces infringement of a patent." 35 U.S.C. § 271 (emphasis added). The patent laws are "domestic in character" and "do not, and were not intended to, operate beyond the limits of the United States." *Brown v. Duchesne*, 60 U.S. 183, 195 (1856). An act "outside of the jurisdiction of the United States is not an infringement," as § 271(a) does not apply to conduct outside of the United States. *Id.*; *Int'l Rectifier Corp. v. Samsung Elecs. Co., Ltd.*, 361 F.3d 1355, 1360 (Fed. Cir. 2004).

To infringe, a product must actually be present in the United States. *See generally Pellegrini v. Analog Devices, Inc.*, 375 F.3d 1113 (Fed. Cir. 2004) (holding that even where accused product is designed in the U.S. and instructions concerning accused product emanate from the U.S., it cannot be patent infringement where a product is manufactured and sold outside of the U.S. because such product is never in the U.S.). Business dealings outside the United States are irrelevant to the inquiry of whether any infringing conduct has occurred in the Untied States. *MEMC Elec. Materials, Inc. v. Mitsubishi Materials Silicon Corp.*, 420 F.3d 1369, 1376 (Fed. Cir. 2005). Mere intention or desire to expand into the marketplace in the United States without any actual overt acts within the United States is not sufficient to sustain a claim of infringement. *See Benetec Australia, Ltd. v. Nucleonics, Inc.*, 495 F.3d 1340,

FOX ROTHSCHILD LLP
[Office Address]

14

1   1348 (Fed. Cir. 2007) (affirming dismissal where no evidence of actual sales or use in
2   the United States).

3       Notwithstanding CTC's ongoing discovery in the State Trade Secret Action
4   involving the same accused product and many of the same parties, CTC continues to
5   be unable to identify a single act of direct infringement in the United States by
6   Mercury or any of the numerous other individual or corporate defendants (because
7   there are none). CTC's claims against Morris, Skonezny, Chen and Harris fail on this
8   basis alone.

9       Territoriality aside, as evidence of direct infringement, CTC offers only
10  conclusory allegations that all defendants make use or sell infringing products, which
11  are clearly insufficient under the *Twombley/Iqbal* standard.  The SAC therefore fails
12  to state a claim for direct infringement against all defendants, including Morris,
13  Skonezny, Chen and Harris, for this independent reason as well.

14      "In order to succeed on a claim of inducement, the patentee must show, first
15  that there has been direct infringement, and second, that the alleged infringer
16  knowingly induced infringement and possessed specific intent to encourage another's
17  infringement."  *MEMC Elec. Materials, Inc. v. Mitsubishi Materials Silicon Corp.*,
18  420 F.3d 1369, 1378 (2005).  To the extent CTC seeks to hold the individual
19  defendants liable on an inducement theory, CTC's allegations well fall short of the
20  mark as to both elements.  As stated above, CTC has not identified any direct infringer
21  or any product within the United States that directly infringes the patents-in-suit.
22  Even if there was merit to CTC's claims (which there clearly is not), foreign entities
23  using accused device cannot commit act of infringement if the acts occur outside the
24  United States, and any allegations that Mercury directs or controls any alleged
25  offshore activities are similarly irrelevant.  *See Microsoft Corp. v. AT&T Corp.*, 550
26  U.S. 437, 443, 457-58 (2007) (citing *Deepsouth Packing Co. v. Laitram Corp.*, 406
27  U.S. 518, 522-24, 526-27 (1972)).

28

FOX ROTHSCHILD LLP
[Office Address]

1      Further, CTC has not alleged any facts establishing the requisite intent for

2    inducement.  To adequately plead inducement, CTC must first allege that each

3    defendant had knowledge of the patents and that, after having acquired such

4    knowledge, each defendant "actively and knowingly aid[ed] and abet[ed]" in the

5    direct infringement of the patents.  (*DSU Med. Corp. v. JMS Co., Ltd.*, 471 F.3d 1293,

6    1304-05 (Fed. Cir. 2006) (internal quotations and citations omitted) (emphasis in

7    original).  Knowledge of the acts alleged to constitute infringement is not enough;

8    specific intent and action to induce infringement must be proven.  *Id.*  CTC has not set

9    forth any factual allegations that any proposed individual or corporate entity ever

10   intended to induce the direct infringement of the patents-in-suit (which has not

11   occurred).

### 4.      CTC Has Not Adequately Pled Alter Ego Liability

13        "[T]he 'corporate veil' shields a company's officers from personal liability for

14   direct infringement that the officers commit in the name of the corporation, unless the

15   corporation is the officers' 'alter ego.'"  *Wordtech Sys., Inc. v. Integrated Networks*

16   *Solutions, Inc.*, 2010 WL 2384958, *3 (Fed. Cir. June 16, 2010) Id. at *3.  Where

17   officers are acting within the scope of their employment for a corporation, it is an

18   abuse of a court's equitable powers to hold that they are personally liable.  *Manville*

19   *Sales Corp. v. Paramount Sys.*, Inc., 917 F.2d 544, 553-554 (Fed. Cir. 1990).

20        Any individual defendants alter ego liability for any act of alleged infringement

21   by  Mercury is evaluated under the laws of the state in which Mercury was formed,

22   Nevada, rather than California law.  *See Fletcher v. Atex, Inc.*, 68 F.3d 1451, 1456 (2d

23   Cir. 1995) ("Because Atex was a Delaware corporation, Delaware law determines

24   whether the corporate veil can be pierced in this instance"); *Kalb, Voorhis & Co. v.*

25   *American Financial Corp.*, 8 F.3d 130, 132 (2d Cir. 1993)(law of the state of

26   incorporation determines when the corporate form will be disregarded and liability

27   will be imposed on shareholders); *Transcontinental Insur. Co. v. Road One, Inc.*, Case

28   No. 1:04-cv-273 2006 U.S. Dist. LEXIS 1071,*20-23 (E.D. Tenn. Jan. 5, 2006)

FOX ROTHSCHILD LLP
[Office Address]

16

1  (applying Delaware law because the company whose veil was to be pierced was

2  incorporated in Delaware); *Schlumberger Logelco Inc. v. Morgan Equipment Co.*, No.

3  C-94-1776 MHP, 1996 WL 251951 (N.D.Cal. May 3, 1996)(law of state of

4  incorporation controls alter ego claim); R*estatement (Second) of Conflict of Laws* §

5  307 (1971) ("The local law of the state of incorporation will be applied to determine

6  the existence and extent of a shareholder's liability to the corporation ... and to its

7  creditors for corporate debts").

8  Mercury is alleged to be a Nevada corporation.  (SAC ¶ 5.)  The new corporate

9  defendants, Energy Technology International Company and Advanced Technology

10  Holdings, are alleged to be citizens of the laws of the Cook Islands and Belize

11  respectively.  (SAC ¶¶ 6-7.)[1]  As discussed above, the SAC is devoid of allegations

12  concerning wrongful activities of those Cook Islands and Belize companies that are

13  inexplicably named as defendants.  It is similarly devoid of allegations of wrongdoing

14  by any of the various other entities identified in paragraph 24 of the SAC that are not

15  named as defendants.  Thus, CTC's allegations of alter ego liability must stand or fall

16  on the asserted relationship between the new individual defendants and Mercury.

17  They fall because the allegations are insufficient to establish alter ego liability.

18  The requirements for applying the alter ego doctrine under Nevada law are:  (1)

19  the corporation must be influenced and governed by the person asserted to be its alter

20  ego; (2) there must be such unity of interest and ownership that one is inseparable

21  from the other; and (3) the facts must be such that adherence to the fiction of separate

22  entity would, under the circumstances, sanction a fraud or promote injustice.  *Ecklund*

23  *v. Nevada Wholesale Lumber Co.*,  93 Nev. 196, 562 P.2d 479, 479-80 (Nev. 1977);

24  *McCleary Cattle Co. v. Sewell*, 73 Nev. 279, 282, 317 P.2d 957, 959 (Nev. 1957).  As

25  the court highlighted in *Ecklund*, alter ego liability is not routinely imposed under

26

27

28

[1] The citizenship of the other corporations referenced in the SAC, but not named as defendants and not accused of any wrongdoing, are not alleged.

17

FOX ROTHSCHILD LLP
[Office Address]

1   Nevada law; in cases where all the elements are not clearly established, the corporate

2   form is respected.  562 P.2d at 480.

3          The SAC is missing all the elements of alter ego liability.  Nowhere does CTC

4   allege even in conclusory fashion, let alone with the specific facts required, influence

5   or governance by any particular individual defendant, unity of interest and ownership

6   or that the corporate separation is fictitious or that to respect that separation would

7   sanction fraud or promote injustice.  Unlike in *Orthokinetics* and the other cases CTC

8   relies upon, CTC has not alleged that there is any individual that in fact controls or

9   directs Mercury or stands in a position to be the principal beneficiary of direct

10  infringement.  Indeed, CTC's proposed SAC naming 32 individual defendants makes

11  it impossible to comprehend how each individual defendant could possibly be the

12  governing force behind and the beneficiary of any alleged infringement so as to be

13  individually liable.

14         **5.      CTC Has Not Alleged Infringement By Mercury's Business**

15                 **Partners**

16         CTC's reason for seeking to add parties with whom Mercury does business is

17  transparent.  It is not that CTC has evidence that those suppliers are infringing CTC's

18  United States patents.  It is that CTC hopes that by subjecting those suppliers to

19  litigation, CTC can disrupt Mercury's business relations.

20         The allegations directed to proposed new defendant Jordana Electric are clearly

21  insufficient.  They are solely contained in paragraphs 30 and 73 of the SAC.  In

22  paragraph 30, CTC alleges that Jordana Electric is "doing business in this judicial

23  district, including business related to the claims asserted in the Complaint."  In

24  paragraph 73, CTC alleges that the Mercury Defendants approached Jordana Electric;

25  that Jordana Electric previously worked with CTC as " a manufacturers'

26  representative assisting in the certification and sale of CTC's patented product"; that

27  Mercury requested that Jordan provide it with identical services; and, in early 2010,

28  Mercury succeeded in convincing Jordan to do so.  That is all.  There is no allegation

FOX ROTHSCHILD LLP
[Office Address]

18

1   that Jordan Electric made, used, or sold any infringing product in the United States, or

2   even that it did anything more than become convinced it should work with Mercury.

3        The allegations directed at Diversified Composites are equally infirm.  Once

4   again the SAC omits allegations of the essential elements of patent infringement: *i.e.*,

5   that Diversified made, used or sold any infringing product in the United States.

6        The allegations directed at Diversified are confined to paragraphs 29 and 56.  In

7   paragraph 29, CTC makes the now familiar conclusory refrain about how Diversified

8   is "doing business in this judicial district including business related to the claims

9   asserted in the Complaint."  Then in paragraph 56, CTC alleges only that the Mercury

10  defendants approached Diversified about providing pultrusion services to manufacture

11  Mercury's allegedly infringing core, and that "[i]t was only after the Mercury

12  Defendants began working with Diversified that they first began to make progress

13  manufacturing their clone of CTC's patented core."  Clearly missing are any essential

14  allegations that Diversified actually performed any infringing act which of course

15  CTC is unable to allege.

16       The grounds asserted in the SAC for purportedly holding General Cable liable

17  are even more egregious  In this instance, they are even at odds with the SAC's

18  description of the subject matter of the patents.  Thus, in paragraphs 35 through 40 of

19  the SAC, CTC identifies the patented invention as the composite core.  Paragraph 41

20  of the SAC recites "CTC manufactures the patented ACCC® core in Irvine, California.

21  This composite core is then "stranded" with the aluminum conductor by companies

22  with whom CTC has distribution and stranding relationships."  However, in making

23  such allegations, CTC offers no suggestion that it claims the stranding process is even

24  part of the invention it claims is at issue in this lawsuit.

25       In the end, the allegations that specifically mention General Cable are limited to

26  what is set forth in paragraphs 28 ("doing business in this judicial district including

27  business related to the claims asserted in the Complaint"), and in paragraphs 55 and

28  64-72.  Paragraph 55 alleges only that the Mercury Defendants approached General

19

FOX ROTHSCHILD LLP
[Office Address]

1  Cable, General Cable had been working with CTC and General Cable and knew the

2  core and how it was made.  Paragraphs 64-71 can and should be discounted entirely.

3  They consist entirely of references to emails other defendants allegedly sent to each

4  other about what they thought General Cable's intentions were.  In paragraph 72, CTC

5  complains that Mercury and General Cable contracted for General Cable to "strand"

6  Mercury's alleged "clone" of the CTC core; "freezing out" CTC; CTC cut ties with

7  General Cable, and "General Cable began working with the Mercury Defendants

8  stranding and selling the infringing clone of CTC's patented core."

9      Based on CTC's pleading, General Cable's alleged stranding of cable for

10  Mercury would not appear to be the basis of CTC's infringement theory.  Moreover,

11  paragraph 72's allegation about who it is that is allegedly selling "the infringing clone

12  of CTC's patented core," is ambiguous at best.  If CTC has information that General

13  Cable is selling the allegedly infringing product in the United States, it should make

14  that allegation.  Of course, it cannot do that, because it is not true, and thus the SAC is

15  similarly futile with respect to General Cable.

16          **6.      CTC Should Not Be Permitted to Add Doe Defendants**

17      As noted, this is now CTC's proposed second amended complaint.  CTC should

18  not be given a blank check to further expand the scope of this litigation by reserving

19  the right to later add new allegations against what it claims are unknown defendants,

20  particularly given that it has already taken discovery in the State Trade Secrets Action

21  which has been pending for years.  No further amendments should be permitted by

22  CTC under any circumstances

23      **D.     Many of CTC's Proposed "Additional Allegations" are Irrelevant**

24          **and Inflammatory**

25      CTC's proposed additional allegations in SAC paragraphs 43-78 do not pertain

26  to the claims asserted by CTC in this case:  patent infringement and copyright

27  infringement.  None of the "additional allegations" addresses whether defendants

28  make, use or sell any infringing device in the United States. Rather, the "additional

20

FOX ROTHSCHILD LLP
[Office Address]

1  allegations" pertain to alleged past relationships among certain parties, emails

2  exchanged among various defendants concerning statements allegedly made by others,

3  price raising by proposed new defendant General Cable, activities by a supplier that

4  CTC alleges did <u>not</u> infringe (Glasforms), formation of offshore companies that are

5  not accused of infringement, and alleged "passing off" of a photograph posted in

6  China.

7       The transparent purpose of the "additional allegations" in SAC paragraphs 43-

8  78 is to attempt to paint defendants in an unfavorable light, and distract from the

9  absence of any factual allegations that might support a claim of infringement.  CTC's

10  excuse that the "additional allegations" are included for purposes of "describing the

11  relationship between the various parties and their participation in the infringement of

12  the asserted patents" rings hollow.

13      Mercury should not have to respond to so-called  inflammatory "additional

14  allegations" that have nothing to do with the claims in this case.  While CTC may

15  want to retry its State Trade Secret Action in a second forum, there is no legal

16  justification for allowing it to introduce such extraneous and irrelevant allegations in

17  this action.  At the very least, should the Court permit an amendment, paragraphs 43-

18  78 of the SAC should be stricken.

19  **IV.    CONCLUSION**

20      For the foregoing reasons, CTC's motion for leave to amend should be denied,

21  and the Court should reschedule the case management conference and issue a

22  scheduling order.  Alternatively, the Court should defer ruling on the motion to amend

23  / / /

24  / / /

25  / / /

26  / / /

27  / / /

28  / / /

FOX ROTHSCHILD LLP
[Office Address]

1   until after the case management conference is conducted and the Court can evaluate

2   proposed amendments and adding new parties in the broader context of this litigation

3   Dated:  June 28, 2010                          FOX ROTHSCHILD LLP

4

5                                          By _____

6                                          James E. Doroshow
                                           Attorneys for Defendant
7                                          MERCURY CABLE & ENERGY, LLC, a
                                           Nevada limited liability company

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

FOX ROTHSCHILD LLP
[Office Address]

Memorandum of Points and Authorities in Opposition to Plaintiff's Motion to File Second Amended Complaint

LA1 46824v1 06/28/10