Nathaniel L. Dilger (Bar No. 196203)
ndilger@onellp.com
**ONE LLP**
4000 MacArthur Blvd.
West Tower, Suite 1100
Newport Beach, California 92660
Telephone:  (949) 502-2870
Facsimile:  (949) 258-5081

Charles F. Brega (Pro Hac Vice)
cbrega@fwlaw.com
Gregory C. Smith (Pro Hac Vice)
gsmith@fwlaw.com
FAIRFIELD & WOODS PC
1700 Lincoln Street, Suite 2400
Denver, CO  80203
Telephone:   (303) 830-2400
Facsimile:    (303) 830-1033

Attorneys for Plaintiff
CTC CABLE CORPORATION

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| CTC CABLE CORPORATION, a Nevada corporation, <br><br> Plaintiff, <br> v. <br> MERCURY CABLE & ENERGY, INC. d/b/a Mercury Cable & Energy, LLC, a Nevada corporation; <br><br> Defendants. | Case No. SACV 09-261 DOC (MLGx) <br><br> REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT |
| MERCURY CABLE & ENERGY, a C-corporation, <br><br> Counterclaimant, <br> v. <br> CTC CABLE CORPORATION, a Nevada corporation, <br><br> Counterdefendant. | |

LAI-3077116v1

**I.      Introduction.**

"Given the liberal standards mandated by Rule 15, the nonmoving party bears the burden of demonstrating why leave to amend should not be granted." *Senza-Gel Corp. v. Seiffhart*, 803 F.2d 661, 666 (Fed. Cir. 1986).  Defendants do not and cannot satisfy that standard here.

Plaintiff CTC Cable Corporation ("CTC") requests that the Court grant leave to file the attached Second Amended Complaint ("SAC").  Ex. 1.[1]  Defendant Mercury Cable & Energy Corp. ("Mercury") has refused to stipulate to CTC's proposed amendment, arguing that (1) it cannot stipulate to the proposed amendment until the Court enters a scheduling order, and (2) CTC's proposed amendments are "futile" as against the newly-named defendants.  Both arguments fail.  First, that this case is at an early stage in fact *favors* granting the requested leave.  Second, to the extent Mercury even has standing to object on behalf of the newly-named defendants, the SAC adequately alleges claims for relief against these defendants, including that the defendants have infringed CTC's patents, both directly and by inducement, and – alternatively – are liable as "alter egos" of the primary infringers.  Any one of these bases, if proven true at trial, would support imposing liability against these defendants.  CTC's proposed amendments are neither untimely nor futile.  The Court should grant leave to amend.

**II.     Discussion.**

Wading through the shrill accusations and innuendo that comprises the majority of its opposition, Mercury raises essentially three reasons the Court should deny CTC's motion to amend:  First, Mercury core argument appears to be that CTC's motion to amend is premature because the Court has not yet issued a scheduling order.  Second, Mercury argues – contrary to its first argument – that leave to amend should be denied because CTC's motion is in fact too late.  Third,

---

[1] All exhibits referenced in this memorandum, including CTC's proposed SAC, are attached to the accompanying Declaration of Nathaniel L. Dilger in Support of Plaintiffs' Motion for Leave to File Second Amended Complaint.

- 1 -

Mercury argues that leave to amend should be denied because CTC's amendments are futile. None of these arguments withstand scrutiny.

## A. <u>It would be improper and unfair to conduct a scheduling conference prior to joining the additional defendants.</u>

CTC's proposed SAC adds several individual and corporate defendants to this action. Mercury opposes entry of the SAC, arguing that no defendants should be added unless and until the court conducts a Scheduling Conference. Mercury's argument simply makes no sense.

As Mercury correctly notes, one purpose of the Scheduling Conference is to provide "the parties the benefit of knowing what deadlines the Court intended to order in this action." Opp. at 2:16-17. For this reason, both the Federal Rules and the rules of this Court require that the parties first meet and confer to discuss and reach agreement on – among other issues – proposed deadlines, which are then submitted to the Court in the form of a Joint Report. Fed. R. Civ. P. 26(f); L.R. 26-1. These deadlines include – most importantly – the date trial is to begin. The parties likewise negotiate and submit proposals regarding other important case issues, including the structure of and limitations on discovery, protective orders, and proposed settlement mechanisms.

It would be patently absurd to require Mercury and CTC to alone negotiate these deadlines and proposals without the participation of and input from the newly named defendants. In fact, this Court has frequently cautioned attorneys appearing before it that – once a trial date is set – the Court will not change that date. It is obviously unfair to set such an immutable and far-reaching deadline without the input of any of the additional defendants named in CTC's proposed SAC.[2]

---

[2] Curiously, Mercury insinuates there must be some nefarious purpose behind CTC's unwillingness to conduct a Scheduling Conference without the additional defendants, arguing that "CTC's proposed amendment should be of course, closely solely [sic] scrutinized" because of this unwillingness. Opp. at 3:16-17. Not surprisingly, Mercury does not and presumably cannot explain what this nefarious purpose could possibly be.

For at least the above reasons, the fact that a scheduling conference has yet to be held in fact *favors* granting leave to amend.

### B. CTC's request to amend is timely.

Flat on the heels of arguing that CTC's request to amend is too early, Mercury next argues that CTC's request to amend is in fact too late. Decrypting Mercury's convoluted argument, Mercury appears to contend that **had** the Court denied Mercury's request to stay, and **had** the Court instead conducted a scheduling conference, and **had** the Court issued a scheduling order, and **had** the scheduling order included a 60-day deadline for amending pleadings, then using some calculation (which Mercury neither describes nor explains), CTC's motion to amend is in fact untimely. In other words, Mercury contends that CTC has unwittingly violated a deadline that this Court has yet to issue, and that the "good cause" standard of Rule 16 applies instead of the more lenient showing required by Rule 15. Understandably, Mercury provides no authority for its novel contention.

But even if Rule 16 somehow applied, CTC was diligent in seeking leave to amend. The only "evidence" Mercury offers unsupported attorney argument, *i.e.*, Mercury asserts that "the alleged facts and additional parties CTC now seeks to add were fully known to CTC during the entire pendency of this action, even before the Court entered its stay." Opp. at 11:4-6. Mercury provides no explanation how this is true, or even if it was true, how it establishes lack of diligence.

CTC has only recently learned much of the facts on which the SAC is based, including the facts regarding the shell corporations Mercury has set up to shield itself from liability and the extent of Mercury's collusion with the additional defendants, including General Cable. More importantly, the SAC now alleges infringement of the *reexamined* patents that issued from the reexamination proceedings initiated by Mercury, which only concluded on June 8, 2010. *See* Ex. 1, SAC, Ex. B. Less than two weeks after receiving this final reexamination certificate, CTC filed its motion for leave to amend. CTC has plainly been diligent

- 3 -

is seeking leave to amend.

## C. CTC's proposed amendments are not futile.

Mercury's final argument is that leave to amend should be denied because CTC's proposed amendments are futile. Mercury is again wrong.

### 1. Mercury lacks standing to argue on behalf of third-parties.

Neither Mercury nor its counsel disputes that they do not speak for any of the newly-named defendants. Ex. 2. Yet Mercury contends that it nonetheless has standing, pointing to an unreported opinion from another court as support for this contention. *See Conlon Group Arizona, LLC v. CNL Resort Biltmore Real Estate, Inc.*, No. CV-08-0965-PHX-FJM, 2009 WL 249419 (D. Ariz. Feb. 2, 2009). In that case, the Court denied a motion to amend that was brought after the Rule 16 deadline and that sought to join parties that were not necessary parties under FRCP 19. *Id.* Neither fact applies here. And more importantly, nowhere does the Court in that case discuss the relationship between the existing defendant, defendants' counsel, and the defendants to be added. This case certainly does not suggest that either Mercury or its counsel have standing to act as a "cat's paw" on behalf of the newly-named defendants.

But even ignoring Mercury's lack of standing to argue on behalf of the newly-named defendants, Mercury's arguments likewise fail on their merits.

### 2. CTC has properly alleged wrongdoing by all the newly named corporate defendants.

Mercury opposes naming Energy Technology International ("ETI") and Advanced Technology Holdings ("ATH") as defendants, arguing that the SAC does not include allegations that these defendants "are engaged in any other wrongful conduct beyond the mere fact that they were formed." Opp. at 12:11-13. But what Mercury cleverly omits in its selected quotes from the SAC is the allegation that each of these defendants "is merely an alter ego of Defendant Mercury." SAC at ¶¶

6, 7. The allegations against Mercury (which Mercury does not dispute are sufficient) thus apply equally to ETI and ATH, which are both alleged to be Mercury's alter egos.

Both ETI and ATH are also alleged to be part of the group referred to in the SAC as "the Mercury Defendants" and are further alleged to be alter egos of the group referred to as "the Individual Mercury Defendants." SAC ¶¶ 22, 25. The SAC includes numerous allegations regarding the wrongdoing of both the Mercury Defendants and the Individual Mercury Defendants with respect to the infringement of CTC's intellectual property rights.

While Mercury argues that CTC has not sufficiently alleged alter ego liability against ETI or ATH, Opp. at 16:13-18:13, this argument fails. As alleged in the SAC, "the Individual Mercury Defendants have repeatedly abused the corporate structure in an effort to hide evidence concerning their business dealings, including conduct related to the claims asserted in this Complaint." SAC ¶ 24. The SAC further alleges that Defendants "have formed multiple 'shell' corporate entities," which are specifically alleged to include both ETI and ATH, "solely to escape liability for [Defendants] wrongful conduct." *Id.* According to the SAC, these "shell" corporations "are mere alter egos of the Individual Mercury Defendants" and "the Individual Mercury Defendants have given little respect to the separate identity of the above corporations, including, for example, a disregard of corporate formalities." SAC ¶ 24. The SAC further alleges that – in light of these alleged facts – "recognition of the corporate form here would either sanction a fraudulent intent to evade liability, or promote injustice to CTC." *Id.*

In light of these allegations, it is proper to consider Mercury, the Individual Mercury Defendants, and the multiple Mercury shell corporations – including both ETI and ATH – as alter egos of each other for purposes of determining liability in this action. CTC's proposed SAC thus adequately states a claim for relief against both ETI and ATH.

### 3. CTC has properly alleged wrongdoing by all the newly named individual defendants.

Mercury opposes joining Michael Winterhalter, Terry McQuarrie, and J. Michael Andrews as defendants, arguing that the allegations of wrongdoing are too "conclusory" to support imposing liability for patent or copyright infringement. Mercury admits that the allegations against Defendants Morris, Skonezny, Chen and Harris are "more detailed," but still – according to Mercury – insufficient to establish individual liability. Opp. at 14:3-6. Mercury is again wrong.

The SAC alleges (as Mercury admits) that each of the above individuals "directs, conducts, controls or ratifies the actions of Mercury, including directing, conducting, controlling, or ratifying the unauthorized infringement of the' 162 Patent, the '319 Patent, and/or the '081Registration." SAC ¶¶ 16, 18, and 20. But Mercury does not even address the numerous cases – prominently featured in CTC's opening brief – holding that "officers of a corporation are personally liable for the tortious conduct of the corporation if they personally took part in the commission of the tort or specifically directed other officers, agents, or employees of the corporation to commit the tortious act." *See, e.g., Orthokinetics, Inc. v. Safety Travel Chairs, Inc.*, 806 F.2d 1565, 1579 (Fed. Cir. 1986); *Fromson v. Citiplate, Inc.*, 886 F.2d 1300 (Fed. Cir. 1989); *Water Techs. Corp. v. Calco*, Ltd., 850 F.2d 660 (Fed. Cir. 1988).

The SAC further alleges that these individuals "are also liable for inducement of infringement of the '162 Patent and the '319 Patent in that they (1) knew or should have known their actions would induce direct infringement by corporations listed above (including Mercury); and (2) by their actions, they actually induced direct infringement by one or more of these corporations." SAC ¶ 27. Mercury again leaves untouched CTC's extensive case authority showing that these allegation – if true – establish liability for inducement of infringement. *See, e.g., Orthokinetics*, 806 F.2d at 1579; *see also Sensonics, Inc. v. Aerosonic Corp.*, 81

F.3d 1566, 1575 (Fed. Cir. 1996); *Fuji Photo Film Co. v. Jazz Photo Corp.*, 394 F.3d 1368, 1377-78 (Fed. Cir. 2005).

The crux of Mercury's argument appears to be its contention – unsupported by anything other than attorney argument – that these individuals are not liable because "Mercury has not made, used or sold any product in the United States." Opp. at 3:11, 15:3-13. According to Mercury, foreign business dealings "are irrelevant to the inquiry of whether any infringing conduct has occurred in the Untied [sic] States." Opp. at 14:22-23. Of course, Mercury's statement is pregnant with what it doesn't state, *i.e.*, Mercury says nothing about whether it has "offered for sale" or "imported" infringing products, presumably because it cannot. Even if Mercury's claim was supported by something more than the *ipse dixit* of its counsel, a complaint for patent infringement cannot be dismissed merely because a defendant has only done *some* of the acts prohibited by 35 U.S.C. § 271.

### 4. CTC has sufficiently alleged liability against proposed defendants Jordana, Diversified, and General Cable.

The proposed SAC alleges that Jordana previously worked with CTC as a manufacturer's representative assisting in the certification and sale of CTC's patented products. SAC ¶ 73. The SAC further alleges that Jordana is now providing identical services to Mercury. *Id.* These allegations – if true – are plainly sufficient to establish a violation of 35 U.S.C. § 271, *i.e.*, Jordana is impermissibly offering for sale or selling Mercury's infringing products.

CTC has likewise alleged a claim for relief against Diversified. The proposed SAC alleges that Diversified had formerly worked with CTC pultruding CTC's patented core and that Diversified is now working with the Mercury Defendants "providing the same pultrusion services to manufacture Mercury's infringing core." SAC ¶ 73. The allegation that Diversified is manufacturing the infringing core – if true – again states a claim for relief under § 271.

CTC likewise alleges a claim for relief against General Cable. The proposed

SAC alleges that at the time General Cable was approached by the Mercury Defendants, it "was still stranding the conductive aluminum wire sheath around the outside of CTC's patented composite core to create a finished conductor wire." SAC ¶ 73. The SAC further alleges that "General Cable began working exclusively with the Mercury Defendants stranding and selling the infringing clone of CTC's patented core." SAC ¶ 72. Once again, selling the accused product is obviously a violation of § 271. And stranding aluminum conductor wire around the accused composite core is likewise a violation of the asserted patents, which include claims directed to both the composite core as well as the finished, stranded aluminum conductor. *See, e.g.,* SAC, Ex. A, '162 Patent, Col. 8 (claiming an "electrical cable" including, in addition to the composite core, "at least one layer of conductor surrounding said outer core.")

For at least the reasons above, CTC's proposed SAC adequately states a claim for relief against Jordana, Diversified, and General Cable.

### 5. CTC has properly named "Doe" defendants.

The SAC includes "Does 1-20" as potential defendants. SAC ¶ 31. Under California law, a plaintiff may bring one or more causes of action against an unknown defendant by timely filing a Doe complaint. Section 474 of California's Code of Civil Procedure provides in pertinent part: "When the plaintiff is ignorant of the name of a defendant, he must state that fact in the complaint ... and such defendant may be designated ... by any name [customarily Doe], and when his true name is discovered, the pleading ... must be amended accordingly...." Cal.Civ.Proc.Code 474 (emphasis added). Under the code, CTC has three years to identify the unknown defendant, amend the complaint, and effect service of the complaint. *See Norgart v. Upjohn Co.*, 21 Cal.4th 383, 87 Cal. Rptr. 2d 453 (1999).

Mercury does not suggest that CTC has somehow failed to comply with the requirements of § 474 (nor could it). Mercury instead simply ignores § 474 altogether, and argues that the use of a Doe complaint here is somehow an improper

"blank check." Mercury does not even attempt to explain why the Court should ignore § 474, and no such reason exists.

The fact is there may indeed by additional individuals and/or corporate entities who are violating CTC's intellectual property rights but whose identities are currently unknown to CTC. This is particularly concerning here given Defendants' efforts to use multiple "shell" entities in an effort to hide their infringing conduct. There is certainly nothing improper in the use of Doe defendants here.

### 6. To the extent Mercury is making a motion to strike, it should be denied.

Mercury's final argument appears to be that the Court should strike paragraphs 43-78 of the proposed SAC because they are somehow "inflammatory" and "attempt to paint defendants in an unfavorable light." Opp. at 21:7-18. Mercury does not, however, explain how these 35 paragraphs are either "inflammatory" or "paint defendants in an unfavorable light" or how even how Mercury might be prejudiced by these allegations. Mercury in fact does not even address any of the supposedly inflammatory allegations. *Id.* The Court should deny Mercury's request for this reason alone. *See Buick v. World Savings Bank*, 565 F.Supp.2d 1152, 1159 (E.D. Cal. 2008) (Motions to strike a pleading are disfavored and "should be denied unless it can be shown that [the challenged matter] could have no possible bearing on the issues in the litigation."); *Bureerong v. Uvawas,* 922 F. Supp. 1450, 1478 (C.D.Cal.1996) (Because of "the limited importance of pleadings in federal practice," motions to strike pursuant to Fed.R.Civ.P. 12(f) are disfavored.); *Cal. Dept. of Toxic Substances Control v. Alco Pacific, Inc.*, 217 F. Supp.2d 1028, 1033 (C. D. Cal. 2002) ("[C]ourts often require a showing of prejudice by the moving party before granting" a motion to strike).

The challenged allegations of the SAC are highly relevant to understanding the relationship between the parties and the reasons for their naming as defendants in the SAC. For example, paragraphs 43-54 of the SAC explain the past

relationship between CTC and the Individual Mercury Defendants and the participation of these individuals in the infringement of CTC's intellectual property. Similarly, paragraphs 55-56, and 72-73 of the SAC explain the past relationship between CTC and Jordana, Diversified, and General Cable and the participation of these companies in the infringement of CTC's patents. As another example, paragraphs 74-78 of the SAC describe Defendants efforts to move their infringing operations offshore, including setting up alter ego "shell" corporations in an effort to evade liability for their conduct.

In addition, the misconduct alleged in the SAC – while it certainly does paint Defendants in a bad light – provides support for CTC's contention that the infringement of its intellectual property has been willful. *See, e.g.,* ¶¶ 85, 91, 99. These allegations likewise support CTC's claims that it is entitled to its attorneys' fees. SAC at 24:5-6.

To the extent Mercury is making a motion to strike, it should be denied.

### III. Conclusion.

The Court should grant CTC leave to amend its complaint. Mercury does not and cannot sustain the heavy burden imposed by Rule 15(a). Consistent with the "short and plain" pleading requirement of Rule 8, CTC has sufficiently alleged claims for relief against the five additional corporate defendants and the seven additional individual defendants. And to the extent Mercury is moving to strike certain allegations of the SAC, this motion should be denied.

Dated: July 5, 2010                  **ONE LLP**

                                          By: /s/ Nathaniel L. Dilger
                                                        Nathaniel L. Dilger

                                          Attorneys for Plaintiff
                                          CTC CABLE CORPORATION