**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

O

**CIVIL MINUTES - GENERAL**

Case No. SACV 09-261 DOC (MLGx)                             Date: January 31, 2011
Title: CTC CABLE CORPORATION V. MERCURY CABLE & ENERGY, INC. ET AL

PRESENT:

THE HONORABLE DAVID O. CARTER, JUDGE

| Kathy Peterson | Not Present |
|---|---|
| Courtroom Clerk | Court Reporter |

ATTORNEYS PRESENT FOR PLAINTIFFS: ATTORNEYS PRESENT FOR DEFENDANTS:

NONE PRESENT                          NONE PRESENT

PROCEEDING (IN CHAMBERS): ORDER DENYING DEFENDANTS' MOTION TO STRIKE SECOND AMENDED COMPLAINT

       Before the Court is a Motion to Strike Second Amended Complaint ("SAC") filed by Defendants Mercury Cable & Energy, Ronald Morris, Todd Harris, Edward Skonezny, and Wang Chen (collectively "Defendants") (Docket 134). The Court finds this matter appropriate for decision without oral argument. Fed.R.Civ. P. 78; Local Rule 7-15. After considering the moving, opposing, and replying papers, the Court DENIES the Motion.

    **I.**     **Background**

       Plaintiff CTC Cable Corporation ("CTC") filed the instant lawsuit on March 3, 2009, alleging two claims for patent infringement against Defendant Mercury Cable & Energy ("Mercury"). On May 21, 2009, the parties stipulated to the filing of a First Amended Complaint ("FAC"), allowing Plaintiff CTC to add a claim for copyright infringement. The Patents-in-Suit include U.S. Patent No. 7,368,162 (the '162 Patent) issued May 6, 2008, and U.S. Patent No. 7,211,319 (the '319 Patent) issued May 1, 2007, both assigned to CTC. These patents deal with electrical transmission technology. More specifically, CTC developed a new type of electrical transmission cable utilizing the Aluminum Conductor Composite Core ("ACCC"), an improvement on a previous type of cable referred to as the Aluminum Conductor Steel Reinforced ("ACSR"). The ACCC includes a patented composite core with aluminum stranded thereon. CTC's composite core is comprised of lightweight fibers such as carbon and glass that are allegedly stronger than the steel used in ACSR cables. As a result, the

composite core in an ACCC cable is smaller than the core in an ACSR cable, allowing for more conductive aluminum to be stranded and thus increasing electrical transmission.  In addition, the ACCC composite core expands less than the ACSR when exposed to heat, thus preventing sagging problems associated with ACSR cables.  The ACCC cable also can function at higher heats than the ACSR cables, providing for increased electrical transmissions

On June 16, 2009, Mercury filed petitions for *ex parte* reexamination of the Patents-in-Suit with the U.S. Patent and Trademark Office ("PTO").  In seeking reexamination, Mercury contends that the Patents-in-Suit are invalid because the claims in the patents are rendered obvious by prior art.  Mercury specifically alleges that the Patents-in-Suit are rendered obvious by a combination of the references in U.S. Patent No. 6,015,953 (the '953 Patent) directed to a "Tension Clamp" and U.S. Patent No. 5,093,162 (the First '162 Patent) directed to a "Large Tip Composite Golf Shaft."  Mercury contends that the '953 Patent discloses a power transmission cable with a composite carbon core and that the majority of the limitations in the Patents-in-Suit can be found in the '953 Patent.  Mercury further alleges that the remaining limitations in the Patents-in-Suit that are not addressed by the '953 Patent are limitations dealing with the existence or various properties of a glass fiber outer core.  Mercury contends that these remaining limitations are supplied by the First '162 Patent and avers that one skilled in the art would be motivated to combine these two previous patents, thus rendering the Patents-in-Suit obvious.  These petitions were initially rejected by the PTO on June 25, 2009 and July 1, 2009, respectively, for failing to include information required by 37 C.F.R. § 1.510(a) and (b)

On July 18, 2009, Mercury filed corrected petitions for reexamination.  The PTO accepted the revised petitions and gave them filing dates of July 18, 2009, pursuant to 37 C.F.R. § 1.510(d).  On August 3, 2009, this Court granted Mercury's motion to stay this action in its entirety pending the completion of the reexamination of the Patents-in-Suit.  In staying this lawsuit, this Court considered the early stage of litigation, the interest in simplifying issues for trial, and the absence of any prejudice to CTC.  The Court also noted the existence of a pending state court action between the parties for trade secret misappropriation.  On August 8, 2009, the PTO granted Mercury's reexamination petitions for both Patents in Suit.

On November 4 and 19, 2009 the PTO issued two Office Actions relating to the Patents.  First, with respect to the '319 Patent, the PTO concluded that 28 of the 29 claims of the '319 Patent were "rejected under 35 U.S.C. § 103 as being unpatentable" based on prior art. Second, with respect to the '162 Patent, the PTO concluded that all 36 of the claims were "rejected under 35 U.S.C. § 103 as being unpatentable" based on prior art.

Following the completion of the PTO's reexamination of the patents-in-suit, the parties stipulated to the lifting of the stay on March 23, 2010 and the stay was lifted by Court Order one day later, on March 24, 2010.  *See* Dkts. 73-74.  In June 2010, CTC then filed its first motion to file an SAC.  The Court denied its motion, noting that CTC had failed to adequately explain its addition of defendants it had not previously identified.  On September 13, 2010, CTC filed a renewed, second

motion to file an SAC, which the Court granted on October 18, 2010.

  Defendants bring the present motion to strike paragraphs 17-24; 40-53; and 55-76 of the SAC.

  **II. Legal Standard**

  Federal Rule of Civil Procedure 12(f) provides that a court "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." FED. R. CIV. P. 12(f). Motions to strike are disfavored and "will usually be denied unless the allegations have no possible relation to the controversy and may cause prejudice to one of the parties." *Friedman v. 24 Hour Fitness USA, Inc.*, 580 F. Supp. 2d 985, 990 (C.D. Cal. 2008) (internal quotation marks and citation omitted). The Ninth Circuit has defined "immaterial" matter as "that which has no essential or important relationship to the claim for relief or the defenses being pleaded." *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993) (internal quotation marks and citation omitted), *rev'd on other grounds*, 510 U.S. 517, 114 S. Ct. 1023 (1994).

  **III. Discussion**

  Defendants rest most of their argument on the idea that the forty-four paragraphs of the SAC which they wish to strike are irrelevant and unrelated to the present litigation before this Court. The SAC contains just three claims: two for patent infringement and the third for copyright infringement. Defendants insist that the additional facts included in the SAC lack any relationship to those three claims, and that, as a result, they should be stricken. The Court disagrees, and emphasizes the general reluctance of courts to strike portions of complaints. *See Lazar v. Trans Union LLC*, 195 F.R.D. 665, 669 (C.D. Cal. 2000) ("Motions to strike are generally viewed with disfavor and are not frequently granted.").

  The Court agrees with Defendants that its prior granting of leave to file an SAC was in no way an endorsement of the content of CTC's SAC. *See* Oct. 18, 2010 Order. Nonetheless, the Court declines to adopt Defendants' narrow and self-serving conception of relevance. The challenged portions of the SAC help CTC to establish facts that address the context through which the allegations that CTC makes against Defendants occurred. The challenged paragraphs address alter ego liability, the Defendants' learning of CTC and its patented technology, as well as CTC's allegations of Defendants' attempt to "kill" CTC. *See* SAC, ¶¶ 17-24; 40-53; 55-76. Those allegations, though provocative, may prove relevant to damages, willfulness, individual liability of specific defendants, attorneys' fees, and injunctive relief. *See* O'Brien Declaration at ¶ 2.

  Defendants also argue that CTC is improperly attempting to include facts relevant only to its other proceeding in state court based on state law claims. However, the Court declines to impose a rule that facts relevant to one proceeding cannot be relevant to another proceeding. It is obvious that simultaneous cases involving the same parties may involve overlapping facts, and, as stated above, the

Court believes the challenged allegations may prove relevant to the case proceeding before it.

Though the Court allows CTC the room to demonstrate relevance, it remains willing to consider future motions from Defendants to prevent the challenged allegations from coming in at trial, should CTC be unable to present supporting evidence.  *See Echostar v. NDS*, No. 8:03-cv-00950- DOC (JTL), Order Granting in Part and Denying in Part Defs' Motion to Strike Portions of the Fourth Amended Complaint, at 2 (C.D. Cal., Carter, J.) (Pl. Ex. 3.  Any worry about the potentially prejudicial effect that any of the facts alleged in the SAC can be resolved by motions in limine.  Moreover, any prejudicial effect resulting from the SAC itself would not be addressed by striking a complaint that has already been made public.

Finally, the Court declines to involve itself in the efforts of both parties to conduct public relations campaigns based on the Court's rulings.

### IV.  Disposition

For the foregoing reasons, the Court DENIES Defendants' Motion to Strike Portions of the SAC.

The Clerk shall serve this minute order on all parties to the action.